UNITED STATES of America,

v.

Jose REYES, Defendant.

No. 98–432.

United States District Court,
E.D. Pennsylvania.

July 2, 2001.

Patrick Askin, U.S. Attorney's Office, Philadelphia, PA, for United States.

L. Felipe Restrepo, Krasner & Restrepo, Philadelphia, Pa, for Jose Reyes.

## MEMORANDUM & ORDER

KATZ, Senior District Judge.

Jose Reyes pled guilty to conspiracy to distribute cocaine, possession of cocaine with intent to distribute, carrying a firearm during a drug trafficking crime, and possession of a firearm by an illegal alien. He now appears before the court to be sentenced and, by a *pro se* Motion and Memorandum for Reduction of Sentence (doc. 22) and a *pro se* letter to the court (doc. 20), he makes several arguments for a sentence reduction.

### Crack vs. Cocaine Base

In light of new stipulations entered into by the parties, which hold Mr. Reyes accountable for 551 grams of cocaine only, his objection to the references to crack cocaine in the PSI are moot.

### Mitigating Role Decrease

■ Defendant argues that under U.S.S.G. § 3B1.2, he is entitled to a two, three, or four level decrease in offense level because he was a minor or minimal participant in the drug organization. He bases this argument on the fact that at the time of his arrest, he possessed only $500.00 in drug proceeds while others arrested had more money. His description of his part in the conspiracy is this:

> Mr. Reyes, was being paid for his services as a bagger, and protector of the drugs that he was responsible for bagging for later distribution, by others in the conspiracy. He was not responsible for the manner of distribution, nor for the sales and proceeds received from future distribution. He simply needed a place to stay, so for his services he was paid a weekly salary, and given a place to stay.

*Pro se* Mot. and Mem. at 4. He argues that this role was minor or minimal within the meaning of the Guidelines.

The court recognizes its authority to make this decrease but declines to do so on these facts. The minimal participant decrease "is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group." U.S.S.G. § 3B1.2 cmt. 1. However low on the organizational totem pole Mr. Reyes's job as bagger may have been, he was an ongoing participant in the scheme who profited from it in an ongoing manner. This distinguishes him from the examples of minimal participants in the Commentary, which says the reduction would be appropriate "for someone who played no other role in a very large drug smuggling operation than to offload part of a single marihuana shipment, or in a case where an individual was recruited as a courier for a single smuggling transaction involving a small amount of drugs." cmt. 2.

The Commentary does not give any examples of a minor participant, but defines it as "any participant who is less culpable than most other participants, but whose role could not be described as minimal." cmt. 3. In Mr. Reyes's description of the events surrounding his arrest, he stated that he shot at the police because he believed they were robbers coming for the drugs and drug money. *See* Gov't Plea Mem. at 20 (summarizing defendant's statement to the police). Because his role as bagger included being the protector of the drugs that he was responsible for bagging to an extent that he was willing to shoot anyone who came after them, the court is unwilling to term him a minor or minimal participant in the group.

### Post–Offense Rehabilitation Efforts

■ In *United States v. Sally,* 116 F.3d 76 (3d Cir.1997), the Third Circuit held that a departure for extraordinary post-offense rehabilitation is "a chance for truly repentant defendants to earn reductions in their sentences based on a dem-

onstrated commitment to repair and to rebuild their lives." *Id.* at 81. "[A]t a minimum, there must be evidence demonstrating that a defendant has made concrete gains toward 'turning [her] life around' before a sentencing court may properly rely on extraordinary post-conviction rehabilitation efforts as a basis for a downward departure." *Id.* Such a departure is proper "provided that the sentencing court makes factual findings demonstrating that the defendant has achieved real gains in rehabilitating [herself] and changing [her] behavior." *Id.* at 82. The Third Circuit instructs sentencing courts to "determine whether [the defendant's] post-conviction rehabilitation efforts are remarkable and indicate real, positive behavioral change." *Id.* at 81.

■ Defendant says that since his arrest, he has attended numerous Adult Continuing Education courses, along with parenting workshops. He also intends to enroll in a comprehensive drug treatment program. Through these measures, he says that "he has progressively pursued avenues to not only enhance his own life and standards of living, but those of his family as well." *Pro se* Mot. and Mem. at 6. On this basis, he argues for a downward departure for extraordinary post-offense rehabilitation efforts under *Sally*.

Mr. Reyes's participation in programs offered at the prison are commendable, and the court sincerely encourages him to continue taking advantage of the available opportunities. His activities, however, do not constitute the sort of extraordinary circumstances contemplated by the Guide-

lines and by *Sally*, and the court declines to depart.

*Jail Conditions*

Defendant reports that he has been housed in several county jails: for roughly five months at Curran Fronthold Correctional Facility, over three months at Philadelphia Correctional Center, and almost two months at Passaic County Jail. He says that he has been "subjected to not only cruel and unusual treatment, but to deplorable living conditions as well." *Pro se* Mot. and Mem. at 8. From this, defendant argues that these circumstances have not been taken into consideration adequately by the Guidelines and thus under *Koon v. United States*, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), provide the basis for a downward departure.

■ It is true that deplorable jail conditions have been recognized by other districts in this Circuit as a possible basis for a downward departure, *see United States v. Sutton*, 973 F.Supp. 488, 493 (D.N.J. 1997) ("There can be little doubt that pretrial detention in substandard conditions can have a punitive effect not contemplated by the Guidelines.").[1] No evidence has been presented in this case that warrants a similar departure. Defendant has not presented any evidence of any specific conditions at any of the jails, and his bald assertion of deplorable conditions is certainly not sufficient to convince the court that his case is outside of the heartland of cases so that the highly infrequent measure of departing should be taken.

*Conclusion*

In light of the parties' new stipulations, Mr. Reyes' objections to the crack refer-

---

1. In *United States v. Booher*, 962 F.Supp. 629 (D.N.J.1997), *rev'd*, 159 F.3d 1353 (3d Cir. 1998), the court explained that this line of argument originated in an unpublished opinion in *United States v. Navarro*, Crim. No. 93–588 (D.N.J. Nov. 18, 1996), in which the judge departed down three points based on the defendant's thirty-two month stay in conditions at a particular jail which had been identified as deplorable in a Department of Justice report. *See* 962 F.Supp. at 635.

ences in the PSI are moot. His Reyes arguments for decrease of offense level and for downward departure fail. An appropriate Order follows.

### ORDER

**AND NOW,** this 2nd day of July, 2001, pursuant to Federal Rule of Criminal Procedure 32(c)(1), and after considering the Presentence Investigation Report, defendant's *pro se* letter to the court (doc. 20), defendant's *pro se* Motion and Memorandum for Reduction of Sentence (doc. 22), and after the sentencing hearing, it is hereby **ORDERED** that the motion is **DENIED** for the reasons set forth in the preceding Memorandum.